IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ERIC I. EISEN,                          )
                  Petitioner,           )
                                        )
            v.                          )       C.A. No. 99-1624
                                        )       Judge Gary L. Lancaster
MARTIN HORN, Commissioner of            )       Chief Magistrate Amy Reynolds Hay
the Pennsylvania Department             )
of Corrections; and                     )
RAYMOND SOBINA, Warden,                 )
State Correctional Institution          )
of Somerset,[1]                         )
                  Respondents.          )


REPORT AND RECOMMENDATION

I.      Recommendation

        It is respectfully recommended that the Rule 60(b) motion be denied and that a certificate

of appealability be denied.  Alternatively, should the district court determine that the Rule 60(b)

motion should be granted and the case reopened, it is respectfully recommended that the Motion

to Introduce Evidence be denied on the merits and that a certificate of appealability be denied.

II.     Report

        Eric I. Eisen, convicted of second degree murder upon his plea of guilt, aided by skilled

attorneys, has been in continuous litigation in both the state and federal courts since December

28, 1995, seeking to challenge that conviction.  In October 1999, Petitioner filed a Section 2254

---

        [1] We note that the caption of the case has not been amended to reflect the fact that it appears
currently, Petitioner is housed at SCI-Greensburg and the Superintendent or Warden there is Melvin
Lockett.  See

        http://www.cor.state.pa.us/inmatelocatorweb/

(Site last visited 8/18/09; indicating Petitioner's place of confinement).

habeas petition in this court, which was ultimately denied on April 5, 2002, by a final judgement. Waiting more than six years since then, and after having been denied a certificate of appealability by the Court of Appeals in 2003, and having been denied a writ of certiorari by the United States Supreme Court in January 2004, and after returning to state court for a second PCRA petition in August 2003, and having been denied a writ of certiorari by the United States Supreme Court in those proceedings on October 6, 2008, Petitioner has now filed on December 1, 2008, a motion that purports to be filed under Fed.R.Civ.P. 60(b)(6), seeking to attack the district court's denial of relief in the federal habeas proceedings.

Petitioner seeks to attack that judgment because of the alleged failure of the Report and Recommendation ("Report") to address one of the issues raised by Petitioner, albeit an issue not raised in the originally filed habeas petition. After the first PCRA proceedings had concluded, Petitioner filed a Section 2254 petition in this court. During the pendency of the habeas proceedings, the Assistant District Attorney, Chris Conrad, who was the prosecutor in Petitioner's criminal case, stated on television in 2000 that the sentencing exhibit, which the prosecutor had agreed be filed in Petitioner's case for the purposes of helping Petitioner to obtain commutation of his life sentence would not, in fact, achieve commutation. Without ever formally amending his habeas petition, Petitioner sought to bring up this issue in the federal habeas proceedings as a claim that the prosecutor had engaged in prosecutorial misconduct during the plea negotiations because the prosecutor believed that which he was giving to Petitioner was worthless and would not ultimately help Petitioner obtain commutation of his sentence. The Report that Magistrate Judge Benson ultimately filed in this case did not specifically address that issue of alleged prosecutorial misconduct. Despite objections filed by

2

Petitioner that raised, *inter alia*, the issue of the Report's failure to address the claim of alleged prosecutorial misconduct, Judge Lancaster's Memorandum Order adopted the Report but did not expressly address the issue of alleged prosecutorial misconduct.  Notably, however, the Memorandum Order addressed none of the issues expressly.  Petitioner now appears to attempt to attack the validity of that Memorandum Order via this purported Rule 60(b) motion.

    A.  <u>Relevant Factual and Procedural History</u>

       The previous 86 page Report, which provided a good factual background to this case and thoroughly addressed all issues that were raised in the habeas petition and which was originally filed in this case by then Magistrate Judge Ken Benson, may be found at Dkt. [61-3] & Dkt. [61-4].  This current Report and Recommendation presumes familiarity with that earlier Report.  We will note only that Petitioner and his co-actor, James Smith, were caught "red-handed" so to speak, with the body of the victim in the trunk of Petitioner's car almost immediately after the shooting.  There was damning evidence that this was a pre-meditated first degree murder, given that there were discussions before the fact between Petitioner and his co-actor as to how to dispose of the body after the deed was accomplished and there was the presence of garbage bags in the car in anticipation of there being blood and so as to keep the blood off of Petitioner's car.  <u>See</u> Dkt. [61-4] at 27 to 28 (Report recounting damning evidence and citing to PCRA transcript).  Hence, Petitioner's trial counsel, William Manifesto, Esquire, believed that the best course of action was to plead guilty to second degree murder in anticipation of applying for commutation, where the chances for commutation would be enhanced with the presence of the sentencing exhibit, casting the crime in a light favorable to Petitioner and sanitizing the record of Eisen's case to keep damning facts out.

3

The procedural history of this case is as follows.  Petitioner pleaded guilty on May 23, 1994 to second degree murder in the February 8, 1993 shooting death of Daniel Bostedo.  The plea agreement as described by the Commonwealth,[2] was as follows:

> Petitioner and the Commonwealth submitted to the Court the following negotiated plea bargain: (1) petitioner would plead guilty at Information CC 199302685 to Second Degree Murder and receive a sentence of life imprisonment; (2) petitioner would plead guilty at Information CC 199304232 to Count 1, Robbery and Count 2, Criminal Conspiracy (with respect to the Robbery of the victim), and receive no further penalty; (3) the Commonwealth would dismiss Count 3 at Information CC 199304232, Criminal Conspiracy (to commit Criminal Homicide): and, (4) a sentencing exhibit would be tendered by the Commonwealth for the record to assist a future Pennsylvania Commutations Board and future governor in determining clemency.

Dkt. [61] at 2 to 3.  <u>See</u> <u>also</u> Habeas Petition, Dkt. [1] at 14 ("In exchange for petitioner's guilty plea to life imprisonment, Mr. Conrad agreed that the state court record would reflect facts in this case that would enhance petitioner's chance for gubernatorial commutation.").  Petitioner exhausted his state court remedies concerning the first PCRA petition on or about March 16, 1999, when the Pennsylvania State Supreme Court denied Petitioner's application for reconsideration of the denial of his petition for allowance of appeal and denied Petitioner's petition for permission to file an amendment to the application for reconsideration.

On October 1, 1999, Petitioner, through Attorneys Caroline Roberto and David Rudovsky, filed a Section 2254 habeas corpus petition in this Court.  Dkt. [1].  On February 1, 2000, the Respondents filed their Answer accompanied by five volumes of exhibits.  Dkt. Nos. [17] to [21].  On March 31, 2000, Petitioner filed a traverse.  Dkt. [28].  On June 26, 2000, the Respondents filed a reply to Petitioner's traverse.  Dkt. [34].

---

[2] The description is not apparently challenged by Petitioner.

Coincidentally, on that same date of June 26, 2000, and of particular significance to the present motion, Petitioner filed a motion to take discovery for purposes of authenticating a videotaped news interview with the prosecutor assigned to Petitioner's criminal case, Mr. Conrad, Dkt. [32], which was also accompanied by a brief in support, Dkt. [33].   That motion and brief asserted essentially that a TV reporter had interviewed the mother of the victim of Petitioner's crime and that the mother told the TV reporter that Mr. Conrad had told her "there would be no way that those two [i.e., Eisen and Smith] would get out of jail."  Dkt. [33] at 2. This was broadcast on the TV news on February 7, 2000.  The brief went on to allege that on February 25, 2000, an interview with Mr. Conrad took place wherein the following exchange occurred:

> **Alan Jennings** [i.e., the TV reporter] : Also included in the plea that kept both men off death row were sentencing exhibits urging both be given serious consideration for future clemency, meaning release from prison.  Conrad argues, however, the plea bargain was meant to keep Smith and Eisen in prison for life.
>
> But if you were so intent on keeping them in prison, why would you sign the sentencing exhibit for their future clemency?
>
> **Chris Conrad:** You want to know something, I didn't think it would ever mean anything in the world.
>
> **Alan Jennings:** I know Chris.  That's not my question though.  Why did – why did you draft it, why did you sign it?
>
> **Chris Conrad:** Because it saved the family from trial.

Dkt. [33] at 2.  Petitioner argued, inter alia, that the TV tape evidenced Conrad engaged in prosecutorial misconduct of fraud and/or misrepresentation in the course of the plea negotiations as to the value of the plea bargain and thus vitiated the validity of the plea agreement.

5

On July 5, 2000, Attorney Jim Lieber entered his appearance on behalf of Petitioner, in addition to the other two attorneys who were already representing Petitioner.  Dkt. [35].  On that same date, Magistrate Judge Benson entered an order that addressed Petitioner's motion to take discovery and that provided, in relevant part as follows:

> in this habeas case[,] the respondent argues vigorously that the issues raised in the petition may not be entertained because of the bars of non-exhaustion/procedural default.  If the respondent is right and these issues have been defaulted or are not exhausted, then we do not get to the merits of the case.  If we do not get to the merits of the case, then evidence of what the prosecutor said to others about the sentencing exhibit, or what he thought of it himself, may not be relevant.
>
> Until it is determined that this evidence is relevant it certainly cannot be said to be crucial.  Therefore, in consideration of the privilege [i.e, the reporter's privilege] I will defer ruling on this motion until such time as I conclude we must get beyond exhaustion and default.
>
> Therefore, this 5th day of July 2000,
>
> IT IS ORDERED that petitioner's motion to take discovery (Docket # 32) is TAKEN UNDER ADVISEMENT until further order of court.

Dkt. [36] at 2.

On July 12, 2000, Magistrate Judge Benson entered an order, Dkt. [37], granting the Petitioner's motion to take discovery for the purpose of authenticating the videotape.[3]  The Respondents in the case at that time filed a motion for reconsideration of Magistrate Judge Benson's order granting the motion to conduct discovery.  Dkt. [38].  On July 25, 2000, Magistrate Judge Benson denied the motion for reconsideration, noting 1) that he had granted the

---

[3]  The order provided in relevant part that

> the court having been working on this case for the past two weeks or so, and while no Report and Recommendation will likely be filed for yet another two weeks or so, the court having determined that the ratio decidendi of this case will NOT be non-exhaustion or procedural default, and hence that the merits will be reached,
>
> IT IS ORDERED that the petitioner's motion (docket # 32) to take discovery for the purpose of authenticating videotape document is granted.

Dkt. [37] at 1 to 2.

6

motion for discovery without ordering the Respondents to respond and 2) the limited scope of the order which merely permitted discovery to ascertain the authenticity of the videotaped interview. Dkt. [39].

On August 18, 2000, after the parties stipulated to the authenticity of the videotaped interviews, Petitioner made a motion to formally introduce portions of the videotaped interview as evidence in the habeas proceeding.  Dkt. [40].  Petitioner also provided as an exhibit thereto a videotaped copy of the interview, Dkt. [41], which remains in the Court's record of the case.  On August 23, 2000, Magistrate Judge Benson ordered that by September 1, 2000, the Respondents were to file a response to the Petitioner's motion to introduce as evidence the videotape.  Dkt. [42].  Respondents filed the first of four motions to extend the time in which to file a response, Dkt. [43], which was granted and which gave Respondents until September 15, in which to file their response.  On September 15, 2000, Respondents filed their second motion for extension of time but before Magistrate Judge Benson had an opportunity to rule on that motion, Respondents filed yet a third motion for extension of time on September 25, 2000, seeking an extension of 20 additional days.  On October 5, 2000, Petitioner filed a response to the motion for extension of time, requesting Magistrate Judge Benson to deny the extension, Dkt. [46], and a brief in support thereof.  Dkt. [47].  On October 16, 2000, Respondents filed a fourth motion to extend time to file their response, seeking an additional 20 days in which to respond.  Dkt. [48].

The next action taken by Magistrate Judge Benson was on January 9, 2002, when he filed his Report that addressed all of the issues raised in the habeas petition but did not address the issue of the videotaped interviews.  The Report recommended denial of the habeas petition, addressing each of the issues raised in the habeas petition on the merits.  Dkt. [49].  After being

granted an extension of time, Petitioner filed lengthy objections to the Report, which included as his very first objection, the fact that the Report failed to address the videotaped interviews.  Dkt. [51].  See also Dkt. [61-5] at 1 ("THE MAGISTRATE JUDGE IMPROPERLY DECLINED TO CONSIDER, WEIGH OR EVEN RULE UPON EVIDENCE BEFORE THE COURT.").[4]  On April 5, 2002, Judge Lancaster issued a memorandum order that noted objections were filed and stated that after "de novo review of the pleadings and documents in the case, together with the report and recommendation and objections thereto" the District Judge adopted the Report and dismissed the habeas petition. Dkt. [52].  See also Dkt. [61-6] at 2 (Respondent's reproduction of Dkt. [52]).  That Memorandum Order also denied a Certificate of Appealability ("COA").

Petitioner then filed a request for a COA with the Third Circuit Court of Appeals, Dkt. [61-7], wherein Petitioner raised the issue of the alleged prosecutorial misconduct by Conrad vis-a-vis the videotaped interview, Dkt. [61-7], but did not argue in any fashion that the Report's failure to address this issue was an independent error.  See Dkt. [61-7] at 16 to 17.  The Court of Appeals denied the COA.  Dkt. [61-9].  Petitioner filed a petition for rehearing or rehearing en banc.  Dkt. [61-10].  Only in that petition, did he then raise the issue of the Report's failure to address the alleged prosecutorial misconduct vis-a-vis the videotaped interview.  Dkt. [61-10] at 14 ("The Commonwealth did not respond to Petitioner's Motion [to introduce the videotaped interviews] and the Magistrate Judge did not rule on or consider this relevant evidence.  This itself is error and requires a remand, since these events occurred after the state court proceedings.  See, Zilich v. Reid, 36 F.3d 317 (3d Cir. 1994).").  The Court of Appeals denied the petition for

---

[4]  Whereas Dkt. [51] is the originally filed Objections, Dkt. [61-5] is a copy thereof reproduced by the Respondents as part of their response to the instant motion. The Court will hereinafter refer to Dkt. [61-5] because of its ease of access via CM-ECF.

rehearing.  Dkt. [61-11].  Petitioner then filed a petition for writ of certiorari.  Dkt. Nos. [61-12]

to Dkt. [61-14].  In that petition for writ of certiorari, Petitioner, in stark contrast to the request

for the COA, prominently raised the issue of the District Court's alleged failure to consider the

evidence of the videotaped interview.  Dkt. [61-12] at 16 to 18.  The United States Supreme

Court denied the petition for writ of certiorari on January 12, 2004.  Dkt. [61-15].

Meanwhile, on August 25, 2003, Petitioner, through Attorney Lieber, filed a second

PCRA petition based upon the video taped interviews, allegedly evidencing the prosecutor's

misconduct in the plea negotiations and claiming the plea was invalid as a consequence.

On January 16, 2004, Petitioner appeared before Judge O'Toole of the Allegheny County

Court of Common Pleas for a hearing on his second PCRA petition.  Attorney Lieber and

Attorney Roberto represented Petitioner.  On April 22, 2004, Judge O'Toole issued an Opinion

and Order of Court, which granted Petitioner relief.  Dkt. [59-3].  The PCRA court found that the

second PCRA petition was untimely filed because it was not filed within 60 days after the

discovery of the new evidence of the videotaped interviews.  Dkt. [59-3] at 5 to 6.  However, the

PCRA court then went on to conclude, as invited by the Petitioner, that Petitioner was entitled to

relief under the state habeas corpus statute and ordered relief based on the state habeas corpus

statute.  Dkt. [59-3] at 6.  The Commonwealth appealed.  The Petitioner filed a cross appeal.  The

Superior Court, on October 27, 2005, in an unpublished memorandum opinion, reversed the

PCRA court in part and vacated the PCRA trial Court's order granting Petitioner a new trial.

Dkt. [61-16].  The Superior Court panel of judges found that the second PCRA petition was

untimely filed because it was not filed within 60 days of the Petitioner discovering the new

videotaped interview evidence and no other exceptions applied.  However, the Court went on to

9

hold that the state habeas statute was not an available remedy to Petitioner.   Id.   The Petitioner

filed a petition for rehearing, which the Superior Court granted.   On October 23, 2006, the

Superior Court en banc, issued an unpublished opinion in which it essentially held that the

second PCRA petition was untimely filed because not filed within 60 days of discovering the

new videotaped evidence and that the state habeas writ was not available to Petitioner.   Dkt. [61-

17].   In the course of doing so, the Superior Court found that Petitioner could have requested this

federal Court to stay and abey Petitioner's Section 2254 petition so that Petitioner could have

then returned to state court and filed in a timely fashion (i.e., within 60 days of discovery of the

videotaped interviews) a second PCRA petition raising that claim.   In doing so, the Superior

Court relied upon the United States Supreme Court cases of Rhines v. Weber, 544 U.S. 269

(2005) and Pace v. Diguglielmo, 544 U.S. 408 (2005).

Petitioner complains about the Superior Court's reliance on these cases, intimating that its

reliance thereon was somehow wrongful given that Petitioner faced the procedural choice of how

to proceed back in 2000, long before the United States Supreme Court decided those two cases.

Dkt. [58] at 10.   However, the Court notes that although that may have been the first time the

United States Supreme Court approved of the stay and abey procedure, other federal courts had

previously ruled that such a procedure was available in light of the AEDPA statute of limitations.

That such a procedure of staying and abeying was available to Petitioner was made abundantly

clear prior to February 2000, given the extant case law indicating such.   See, e.g., Slutzker v.

Johnson, 393 F.3d 373, 383 (3d Cir. 2004)("Most of the Courts of Appeals have held, before and

after *Duncan* [*v. Walker*, 533 U.S. 167 (2001)], that District Courts could stay mixed petitions

when dismissal might render them untimely. *See, e.g., . . . Mackall v. Angelone*, 131 F.3d 442,

10

445 (4th Cir. 1997); *Brewer v. Johnson*, 139 F.3d 491, 493 (5th Cir. 1998); . . . *Freeman v. Page*,

208 F.3d 572, 577 (7th Cir. 2000); *Calderon v. United States Dist. Court for the N. Dist. of Calif.*,

134 F.3d 981 (9th Cir. 1998)"); Morris v. Horn, 187 F.3d 333 (3d Cir. 1999)(discussing stay and

abey procedure).  See also Graham v. Johnson, 168 F.3d 762, 778 (5th Cir. 1999)("*Burris*[*v.

Farley*, 51 F.3d [655,] 658-59 (7th Cir. 1995)] and *Fetterly*[ *v. Paskett*, 997 F.2d 1295, 1297-98

(9th Cir. 1993)] held *fully exhausted* habeas applications in abeyance pending exhaustion of *other*

claims that had not yet been presented to the state courts.").  The situations in Burris and Fetterly

are very similar if not the exact situation that confronted Petitioner in 2000, his habeas petition

contained fully exhausted claims and he attempted to bring this new claim of the videotaped

evidence that was just newly discovered and hence not presented to the State Courts.[5]  We are not

---

[5]  In this vein we note the following.  Petitioner argues that Magistrate Judge Benson's order of July 12, 2000, granting him leave to conduct discovery to authenticate the videotaped interviews, constituted an order finding that adding this claim would not be adding a new claim so as to render the habeas petition a mixed petition. Dkt. [58] at 7.  We do not find that to be so.  In fact, in his July 25, 2000, order denying the Commonwealth's Motion for Reconsideration of his July 12th order, which had granted leave to conduct discovery, Judge Benson expressly noted the limited nature of the July 12, 2000 order.  Magistrate Judge Benson specifically noted that the "Commonwealth argues the habeas corpus petition is 'now . . . a mixed petition[.]'" In response, Magistrate Judge Benson's July 25, 2000 order stated

> It seems the respondent has overreacted to the court's order.
> The petitioner has not moved to enlarge the record.  The petitioner has not moved for an evidentiary hearing (at which evidence might be offered).  The petitioner is on record, in its reply to the respondent's answer [i.e., Dkt. [28], a reply that was dated March 31, 2000] as saying "record evidence supports each claim for relief." [Dkt. [28] at 16.]  All the petitioner has done by its motion is ask leave to take a deposition so that it can try to authenticate  a "videotape document." And that is what the court has granted.

Dkt. [39] at 2 to 3.  We read the order simply as granting leave to conduct discovery.  We note that at no point in the proceedings did Petitioner ever move to amend his habeas petition to seek to add a claim of prosecutorial misconduct based upon the claim that the prosecutor allegedly misled the Petitioner and Petitioner's trial counsel as to the value of the sentencing exhibit.  While Magistrate Judge Benson may have contemplated such a request being made by Petitioner and hence granted the motion for leave to conduct discovery in contemplation thereof, it does not follow that Magistrate Judge Benson held in his

(continued...)

convinced that Petitioner's highly skilled attorneys in 2000 did not know of these cases or with reasonable diligence could not have discovered these cases.[6]   See also  Jackson v. Roe, 425 F.3d 654 (9th Cir. 2005) (recounting history of stay and abey procedure);  Zarvela v. Artuz, 254 F.3d 374, 380 (2d Cir. 2001)("Courts considering habeas petitions containing both exhausted and unexhausted claims after the enactment of AEDPA have disagreed as to the appropriate disposition. The Seventh Circuit has recommended that district courts stay mixed petitions. *Freeman v. Page*, 208 F.3d 572, 577 (7th Cir. March 28, 2000). The Fifth Circuit has allowed district courts to dismiss mixed petitions. *Graham v. Johnson*, 168 F.3d 762, 778 (5th Cir. 1999). The Ninth Circuit has recommended that district courts dismiss only the unexhausted claims of mixed petitions and stay the remaining claims. *Calderon v. United States District Court*, 134 F.3d 981, 986-88 (9th Cir.1998). We have not yet explicitly considered the issue.");  Calderon v. U.S. Dist. Court for Northern Dist. of California, 144 F.3d 618 (9th Cir. 1998);  Walker v. Attorney General for State of Oklahoma, 167 F.3d 1339, 1343 (10th Cir. 1999)("Before the

_____

[5](...continued)
July 12, 2000 order that adding this particular claim of prosecutorial misconduct would not then render the habeas petition a mixed petition.  While it is true that Judge Benson stated in the July 12, 2000 order that he had determined that "the ratio decidendi of this case will NOT be non exhaustion or procedural default, and hence the merits will be reached" he also indicated in that same order that a Report and Recommendation "will likely [not] be filed for yet another two weeks or so[.]" Dkt. [37] at 1.  We take this to mean that Magistrate Judge Benson was going to make a recommendation as to the habeas petition **as filed**, i.e., as not including the new claim of videotaped evidence, given that the prosecutorial misconduct claim based on the videotaped interviews had not yet even been distilled given no discovery had taken place as of July 12, 2000, and no formal request for leave to amend the habeas petition in order to add the claim had ever taken place, nor had any such leave been granted.  Hence, it appears that Magistrate Judge Benson was going to write a recommendation to dispose of the habeas petition as filed, which did not include the after discovered claim of alleged prosecutorial misconduct and it further appears that the July 12, 2000 order simply found that the claims contained in the originally filed habeas petition were exhausted and not procedurally defaulted.

[6]  In fact, it appears that Attorney Caroline Roberto was counsel of record in a case which utilized such a stay and abey procedure in this Court in the death penalty habeas case of Szuchon v. Lehman, No. 94-195E (W.D. Pa. Dkt. 15 (motion for stay and abeyance) filed 8/22/1994).

Supreme Court handed down its decision in *Cooper*, Mr. Walker filed the present petition for writ of habeas corpus. After *Cooper* was decided, he supplemented his federal habeas petition to add a claim based on that case. The federal district court stayed action on the petition to permit Mr. Walker to exhaust his state remedies by filing an application for post-conviction relief with the Oklahoma Court of Criminal Appeals. *See Walker v. Ward*, 934 F.Supp. 1286, 1294 (N.D.Okla. 1996).").

After the Superior Court's en banc decision, Petitioner filed a Petition for Allowance of Appeal ("PAA") in the Pennsylvania State Supreme Court.  On October 18, 2007, the Pennsylvania State Supreme Court granted the PAA in part but limited solely to the following issue.

> Whether a second PCRA petition invoking the after-discovered evidence exception to the PCRA's one year filing requirement was filed "within 60 days of the date the claim could have been presented" under 42 Pa.C.S.A. §9545 where the petition was filed within 60 days of the conclusion of the Petitioner's federal habeas corpus proceedings and where the filing of the petition prior to the conclusion of the federal proceedings would have jeopardized the Petitioner's federal review of his then-existing federal habeas corpus claims and/or his after-discovered evidence claim?

Dkt. [61] at 19.  After oral argument, the Pennsylvania State Supreme Court then, on March 24, 2008, dismissed the appeal as having been improvidently granted.   Petitioner filed a petition for writ of certiorari in the United States Supreme Court on June 20, 2008.  The United States Supreme Court denied the petition for writ of certiorari on October 6, 2008.

Petitioner then filed the instant motion in this court on December 1, 2008, and an amended motion on December 3, 2008.  Dkt. [59].   Petitioner also filed a brief in support.  Dkt. [58].  The Respondents filed a response, Dkt. [61].  Petitioner filed a reply.  Dkt. [62].

B. <u>Discussion</u>

Petitioner has purportedly filed a motion pursuant to Fed.R.Civ.P. 60(b).  Fed.R.Civ.P. 60(b) provides that

> **b) Grounds for Relief from a Final Judgment, Order, or Proceeding.** On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
> > **(1)** mistake, inadvertence, surprise, or excusable neglect;
> >
> > **(2)** newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> >
> > **(3)** fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> >
> > **(4)** the judgment is void;
> >
> > **(5)** the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
> >
> > **(6)** any other reason that justifies relief.
>
> **(c) Timing and Effect of the Motion.**
>
> > **(1) *Timing.*** A motion under Rule 60(b) must be made within a reasonable time--and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding.

The Court of Appeals has explained that whether to grant or deny such a Rule 60(b) motion is addressed to the sound discretion of the District Court and that one who makes such a motion carries a heavy burden of proving extraordinary circumstances.  <u>Bohus v. Beloff</u>, 950 F.2d 919, 930 (3d Cir. 1991); <u>Hodge v. Hodge</u>, 621 F.2d 590, 593 (3d Cir. 1980).  The Court of Appeals further explained:

> A district court properly exercises power over a Rule 60(b) motion where the motion is made within a reasonable time, subject to a maximum time limit of one year after the judgment if made pursuant to clauses (1) through (3), or solely

"within a reasonable time," if made pursuant to clauses (4) through (6). In either instance, "what is a reasonable time must depend to a large extent upon the particular circumstances alleged." 7 J. Moore & J. Lucas, supra, at ¶ 60.27[3], p. 60-301.

. . . .

If the district court has the power to grant relief under Rule 60(b), the determination to grant or deny relief is within the sound discretion of the court. See 7 J. Moore & J. Lucas, supra, at ¶¶ 60.19, 60.27[2], pp. 60-149, 60-272. We have long held in this circuit that "[ r]ule 60( b)(6) is available only in cases evidencing extraordinary circumstances." *Stradley v. Cortez*, 518 F.2d 488, 493 (3d Cir. 1975). *See also Mayberry v. Maroney*, 558 F.2d 1159, 1163 (3d Cir. 1977) (relief justified "only upon a showing of 'exceptional circumstances,' " and where "absent such relief an 'extreme' and 'unexpected' hardship will result"). In exercising its discretion the district court is guided by a number of relevant factors, inter alia, "[1] the general desirability that a final judgment should not be lightly disturbed; [2] the procedure provided by Rule 60(b) is not a substitute for an appeal; [3] the Rule should be liberally construed for the purpose of doing substantial justice; [4] whether, although the motion is made within the maximum time, if any, provided by the Rule, the motion is made within a reasonable time; ... [5] whether there are any intervening equities which make it inequitable to grant relief; [6] any other factor that is relevant to the justice of the [order] under attack...." *See id*. at ¶ 60.19, pp. 60-164-60-165.[10]

_____

[10]. Other "relevant factors and propositions," that the district court may consider in exercising its discretion on a Rule 60(b) motion include: "if relief is sought from a default judgment or a judgment of dismissal where there has been no consideration of the merits, whether in the particular case the interest of deciding cases on the merits outweighs the interest in orderly procedure and in the finality of judgments, and whether there is merit in the defense or claim, as the case may be; if relief is sought from a judgment rendered after a trial on the merits, whether the movant had a fair opportunity to present his claim or defense...." 7 J. Moore & J. Lucas, supra note 2, at ¶ 60.19, p. 60-164. None of these factors are applicable here.

Lasky v. Continental Products Corp., 804 F.2d 250, 255 -56 (3d Cir. 1986).  We find that

Petitioner has failed to carry his heavy burden to show the extraordinary circumstances necessary

to justify Rule 60(b) relief and that he has failed to show that he brought this motion within a

reasonable time.

First, as argued by the Respondents, Petitioner has not brought this motion within a reasonable time after the judgment was entered.  Dkt. [61] at 28.  As noted by the Respondents, the motion was filed over six years after the judgment was entered.  We agree that a delay of over six years under the facts of this case is not a "reasonable time" within the contemplation of the rule.  Petitioner argues however that he had "good reason for not having filed this Rule 60(b)(6) motion sooner than he did."  Dkt. [62] at 4.  That reason is "Petitioner has been involved in near-constant litigation attempting to have either the Federal courts or the State courts consider this evidence on Petitioner's post-conviction collateral proceedings.  Petitioner's litigation in federal and state courts did not end until October 6, 2008."  Id.  The unstated premise of this argument is that Petitioner could not simultaneously litigate the Rule 60(b) motion and those other proceedings.

That premise is simply incorrect.   He most certainly could have filed this Rule 60(b) motion even while his appeal or request for COA was pending before the Court of Appeals.  See, e.g., Hancock Industries v. Schaeffer, 811 F.2d 225, 239 (3d Cir. 1987)("we approvingly noted the following procedure: When an appellant in a civil case wishes to make a [Rule 60(b)] motion ... while his appeal is still pending, the proper procedure is for him to file his motion in the District Court. If that court indicates that it will grant the motion, the appellant should then make a motion in this court for a remand of the case in order that the District Court may grant the motion....")(quoting  Smith v. Pollin, 194 F.2d 349, 350 (D.C.Cir. 1952)).  See also Droz v. Tennis, NO. CIV. A. 08-2441, 2008 WL 5501147, at *3 (E.D.Pa. Nov. 25, 2008) ("Petitioner's Rule 60(b) motion does not raise any fact or applicable rule of law that did not exist or was not

apparent when his habeas petition was initially denied by Judge DuBois on May 10, 2006. The

fact that petitioner ultimately appealed Judge DuBois' decision to the Supreme Court is irrelevant

for purposes of determining the timeliness of the instant 60(b) motion.").  Even if Petitioner had

wanted to wait until the federal proceedings were completed on January 12, 2004 (the date

whereon the United States Supreme Court denied certiorari in the federal habeas proceedings),

there is no reason why once those federal proceedings concluded that he could not have filed the

Rule 60(b) motion in this Court in January 2004, and also proceed in the state courts

simultaneously.  At least, he has not demonstrated such, as is his burden, to show that this

petition was brought within a reasonable time.  Moreover, because Petitioner knew all of the

facts necessary to bring this claim back in January 9, 2002, when Magistrate Judge Benson did

not explicitly address the issue, and on April 5, 2002, when Judge Lancaster entered his final

judgment order, Petitioner has simply failed to carry his heavy burden to show that he is entitled

to Rule 60(b) relief.  Gordon v. Monoson, 239 F. App'x. 710, 713 (3d Cir.2007) (("[w]here it is

undisputed that most, if not all, of the conduct that forms the basis of [petitioner's] motion under

Rule 60(b) was known to him [at the time of the District Court's decision], we find no abuse of

discretion in the District Court's ruling that the portion of his motion seeking relief under Rule

60(b) was untimely").

        Alternatively, even if he had brought this motion within a reasonable time, it should be

denied for yet another independent reason.  The relief that Petitioner apparently seeks in this case

is to have Magistrate Judge Benson's Report and Recommendation set aside because it failed to

address the alleged issue of prosecutorial misconduct before him.  See, e.g, Dkt. [59] at 1

("Extraordinary circumstances in this case require that the Report and Recommendation of the

Magistrate Judge denying Petitioner's habeas corpus petition be set aside . . . ."); id., at 5, ¶ 23

("Petitioner had properly raised the videotaped evidence of deception at every stage in the federal

system but never received the right to a ruling on his Motion to Introduce, or a ruling on the

merits of the videotaped evidence.").   There are at least two problems with this argument.

    First, the failure of the Magistrate Judge to explicitly rule on the Petitioner's Motion to

Introduce and or to address the issue of the alleged prosecutorial misconduct evidenced by the

videotaped interviews is simply a non-issue.  Given that Petitioner never formally moved to

amend his habeas petition to include the newly discovered claim of alleged prosecutorial

misconduct, it does not seem to this Court that the claim on the merits was even properly before

the Magistrate Judge.  See Grayson v. Mayview State Hospital, 293 F.3d 103, 109 n.9 (3d Cir.

2002)("For the sake of clarity,  a prisoner plaintiff (or any other plaintiff) should not be able

effectively to amend a complaint through any document short of an amended pleading.").  Hence,

it would have been entirely proper for Magistrate Judge Benson to have denied the Motion to

Introduce, because the evidence of the videotaped interviews was not relevant to any existing

claim in the originally filed habeas petition.[7]

    Secondly, even if however, we were to assume that Magistrate Judge Benson had

permitted the habeas petition to be amended *sub silentio* by the filing of the motion for leave to

conduct discovery and by the grant thereof and that Petitioner's Motion to Introduce was

---

[7] While it may be argued that Magistrate Judge Benson's grant of Petitioner's request to conduct discovery related to the videotaped interviews was an indication that he might be open to a motion for leave to amend the habeas petition to include such a new claim, as explained earlier, the grant of such a motion to conduct discovery is not necessarily a sign that Magistrate Judge Benson believed that the mere filing of such a motion in effect amended the habeas petition to include such newly discovered evidence and new claim of prosecutorial misconduct based thereon.

therefore properly before Magistrate Judge Benson, the entire factual premise of Petitioner's Rule 60(b) motion and upon which he bases a claim of extraordinary circumstances is his claim that he "never received the right to a ruling on his Motion to Introduce, or a ruling on the merits of the videotaped evidence." Dkt. [59] at 5, ¶ 23.  That factual premise is simply wrong.

After the Report and Recommendation was issued, Petitioner was given an extension of time in which to file his objections and he did file those objections.  Dkt. [61-5].  The very first page of the objections in bold capitalized letters stated: **THE MAGISTRATE JUDGE IMPROPERLY DECLINED TO CONSIDER, WEIGH OR EVEN RULE UPON EVIDENCE BEFORE THE COURT.** Dkt. [61-5] at 1. See also id. ("A.  The Magistrate Judge Failed to Consider Facts Relevant to Determining Conrad's State of Mind"); id., at 4 ("B.  The Magistrate Should have Held an Evidentiary Motion [sic] to Consider the New Evidence").  The District Court in its April 4, 2002 order, entering final judgment in the case, expressly stated that "[a]fter de novo review of the pleadings and documents in the case, together with the report and recommendation and objections thereto, the following order is entered: AND NOW, this 4ᵗʰ day of April 2002: IT IS HEREBY ORDERED that the petition for writ of habeas corpus is dismissed."  Dkt. [61-6] at 2.  It is simply not true as a factual matter, as Petitioner claims, that he "never received the right to a ruling on his Motion to Introduce" because Judge Lancaster's order, which expressly notes that he considered the objections, must be deemed to have been a ruling, at the very least, on that Motion to Introduce and must be deemed to have been a denial of that Motion to Introduce.  Steward v. International Longshoreman's Ass'n., Local No. 1408, 306 Fed.Appx. 527, 529 (11ᵗʰ Cir. 2009) ("Although the district court did not expressly rule on Steward's motion to dismiss ILA's motion for summary judgment as a discovery sanction, the

entry of a final judgment implicitly denied his pending motion. *See Chalwest (Holdings) Ltd. v. Ellis*, 924 F.2d 1011, 1012 (11th Cir. 1991) (holding that an appellant's request for an evidentiary hearing was denied sub silentio by the district court's order of dismissal)."); U.S. v. Donohoe, 458 F.2d 237, 238 (10th Cir. 1972)("The order entered denying the motion specifically recited that the defendant throughout all of the proceedings was ably and effectively represented. The other two points raised by the petition were not specifically mentioned in the order, but by the denial of the motion we must assume that the trial court deemed those points to be without merit.")  See also, Goodman v. New Horizons Community Service Bd., 2006 WL 940646, at *3 (11th Cir. April 12, 2006) ("[T]he entry of a final judgment implicitly denies any pending motions."); Addington v. Farmer's Elevator Mut. Ins. Co., 650 F.2d 663, 666 (5th Cir. 1981) ("The denial of a motion by the district court, although not formally expressed, may be implied by the entry of final judgment...."); Cohen v. Curtis Pub. Co., 333 F.2d 974, 977 (8th Cir.1964) ("[T]he entry of final judgment in a cause is in effect an overruling of all motions pending prior thereto in the case.")(internal citation and quotation omitted); Elliott v. Folino, Civ.A. 07-289, 2007 WL 1545558 at *1, n.1 (W.D.Pa. May 29, 2007) (explaining that an order granting the defendant's motion to dismiss without addressing the plaintiff's pending motions operated to deny such pending motions *sub silentio* ).  Hence, Petitioner's contention that he never received a ruling on his Motion to Introduce is simply wrong both as a matter of law and of fact.  Thus, the premise of his Rule 60(b) motion is wrong and again, he has failed to demonstrate such extraordinary circumstances so as to carry his burden to show entitlement to Rule 60(b) relief.

In the alternative, even if we assumed for the sake of argument that Petitioner did not receive a ruling on his Motion to Introduce nor a ruling on the merits of the claim of alleged

prosecutorial misconduct, (a claim we note that did not exist in the originally filed habeas petition, and that originally filed habeas petition was never amended so as to include such a claim), we would still find Petitioner has failed to carry his burden to show entitlement to relief. Considering the factors announced in Lasky v. Continental Products Corp., 804 F.2d 250, 255 - 56 (3d Cir. 1986), we find Petitioner has failed to convince the Court that those factors weigh in favor of granting Rule 60(b) relief.  The general desirability that a final judgment should not be disturbed weighs heavily in favor of denying the motion, especially given that Petitioner presented this very issue to: 1)  the District Court in his objections; 2) to the Third Circuit Court of Appeals in his petition for rehearing; and 3) in his petition for certiorari to the United States Supreme Court, and none of those Courts found the arguments made therein so compelling as to grant relief.  Moreover, in denying his objections, the District Court denied relief to Petitioner in circumstances where Petitioner faced a lesser legal burden than the legal burden for obtaining Rule 60(b) relief (i.e., de novo review of objections by the District Court reviewing Magistrate Judge Benson's Report).

The second factor of finding Rule 60(b) not a substitute for appeal also weighs heavily in favor of denying the motion.  In his initial request for a COA, Petitioner completely abandoned the issue of the Magistrate Judge's failure to address his Motion to Introduce.  See Dkt. [61-7].[8] It was only in his petition for rehearing that Petitioner raised the issue of the Magistrate Judge's

---

[8]  The Petitioner did recount the factual claims of the prosecutor's giving of the interview and what was said. Dkt. [61-7] at 16 to 17.  However, Petitioner only mentioned the fact that "the Magistrate Judge did not rule on the motion." Dkt. [61-7] at 17 n.8.  Petitioner never argued that the failure of the Magistrate Judge to rule on the Motion was an independent reason for the grant of relief in the form of a remand as Petitioner explicitly did in the petition for rehearing. Dkt. [61-10] at 14 ("the Commonwealth did not respond to Petitioner's Motion [to Introduce] and the Magistrate Judge did not rule on it or consider this relevant evidence.  This itself is error and requires a remand . . . .").

failure to address the motion.  Dkt. [61-10] at 14.  Thus, we find that Petitioner waived this issue

on appeal and so this Rule 60(b) motion should not be permitted to play the role of a substitute.

See, e.g., U.S. v. Real-Ordones, 43 Fed. Appx. 229, 230 n.1 (10th Cir. 2002)("Del

Real-Ordones's Motion for a COA raises additional issues; he has waived those claims however

by failing to raise them in his opening brief. See Fed. R.App. P. 28(a)(5), 28(a)(9); *see also Pino*

*v. Higgs*, 75 F.3d 1461, 1463 (10th Cir. 1996) (concluding that an issue raised in the preliminary

docketing statement, but not argued in the opening brief, is waived). Del Real-Ordones's pro se

Motion for a COA was filed before the opening brief, which was prepared and filed by counsel.

Consequently the need to construe his pro se pleadings liberally is not implicated in this case.");

Ortiz v. Quarterman, 509 F.3d 214, 215 (5th Cir. 2007)("Although, in the proceedings below,

Ortiz did raise a claim that his trial counsel rendered ineffective assistance by failing to object to

the exclusion of these eighteen prospective jurors, he did not raise this ineffective assistance

claim in the brief in support of his application for a COA in this Court. Accordingly, Ortiz has

waived this ineffective assistance claim.").

Hence, having waived the claim before the Court of Appeals, Petitioner is simply now

attempting to utilize the Rule 60(b) motion as, in effect, a second opportunity to appeal Judge

Lancaster's order and this is not permitted.  See, e.g., Droz v. Tennis, 2008 WL 5501147, at *4

("These very claims were also raised in petitioner's objections to Magistrate Judge Welsh's

Report and Recommendation. See Petitioner's Objection to Report and Recommendation at 6-7.

These objections were part of the record when Judge Dubois adopted Magistrate Judge Welsh's

Report and Recommendation and denied petitioner's habeas appeal. If this Court were to

entertain these objections once again, it would be tantamount to allowing surreptitious appeal of

the district court's judgment.").

We find Petitioner has failed to carry his burden to show that the third consideration as to doing substantial justice weighs in his favor.  This is because the underlying claim he makes is simply not very convincing.  The claim is that the prosecutor engaged in prosecutorial misconduct because he mislead Petitioner as to the value of the sentencing exhibit and presumably as to the value of the recommendation from the District Attorney's office contained therein that the Board of Pardons favorably consider Petitioner's application for clemency when the sentencing exhibit stated: "[i]t is the request of this office that due to his [i.e., Petitioner's] actions during these criminal proceedings that serious consideration be given Eric Eisen at the point of any clemency request."  Dkt. [1], App'x at 34.   Petitioner repeatedly maintains the argument that the prosecutor misrepresented the value of the sentencing exhibit. For example, Petitioner argues that "Conrad had given Eisen (through Manifesto) the consistent indication that the Commonwealth was seeking to provide Eisen with the opportunity to optimize his chances for eventual release through commutation."  Dkt. [58] at 16.  Petitioner goes onto argue that "District Attorney knew the Sentencing Exhibit was worthless and deceived the Petitioner into a guilty plea."  Dkt. [58] at 19.   Petitioner's arguments conflate two distinct concepts: one is the nature of the promise actually made by Conrad, i.e., to enhance Petitioner's chances at commutation and second is Conrad's estimation of those chances, even with the sentencing exhibit.  As to the first concept, it is beyond cavil that the prosecutor was giving Petitioner, via this sentencing exhibit, "the opportunity to optimize his chances for eventual release through commutation."  Dkt. [58] at 16.  The Prosecutor fulfilled this promise.  This Court finds, as did the PCRA court, which  granted Petitioner relief on the first PCRA petition, that "it is clear that

23

the sentencing exhibit certainly postures him [i.e., Petitioner] in a better position than if it did

not exist[.]" Dkt. [61-14] at 33.[9]   Hence, the Prosecutor gave Petitioner something of value in

the plea bargain, i.e., positioning him with a greater opportunity for commutation than if he did

not have the exhibit.

As to the second concept that Petitioner's argument conflates, while Petitioner's

opportunity or chance for commutation was greater with the sentencing exhibit than without it,

the Prosecutor apparently believed that such greater opportunity or chance was still negligible

based upon his belief that the Board of Pardons would still likely deny Petitioner's request for

commutation.  However, the prosecutor's privately held belief as to what might occur in the

future simply cannot form the basis of a claim of fraud under the facts of this case and the

principles of contract law and due process that inform the analysis of plea bargains.  See, e.g., 26

Williston on Contracts § 69:11 (4th ed.)("It is well settled that a claim of fraud must rest on an

inaccurate assertion as to a matter of past or existing fact.  As a corollary of this basic

proposition, it is frequently said that a promissory statement cannot be the basis of an action for

deceit; and that representations as to expectations and predictions as to future results or events

cannot support a fraud claim.")(footnote omitted).  To the extent that the law of Pennsylvania

would govern our analysis of this issue, we note that it is the same as what was just quoted from

_____

[9]  The entire sentence of the PCRA court reads as follows: "While it is clear that the sentencing
exhibit certainly postures him in a better position than if it did not exist the tenuous benefit of the
sentencing exhibit is not all clear."  Dkt. [61-14] at 33.  The meaning of the latter part of the sentence
(i.e. beginning with "the tenuous") is not entirely clear to this Court.  It may simply mean that while the
sentencing exhibit provides a benefit to Petitioner, it is not clear that it will accomplish its objective of
obtaining a commutation.  However, there was no such promise made at least by the Commonwealth that
Petitioner would be guaranteed a commutation.  Indeed, no such assurance could be given.  The Court
notes that Petitioner did argue that his trial attorney made such a promise but this argument was in
essence rejected by Magistrate Judge Benson.  Dkt. [61-4] at 14 to 22.

24

Williston.  See, e.g.,  Neale v. American Motorists Fire Ins. Co., 138 A.2d 290,291 (Pa.Super

1958)("In order to void a contract allegedly induced by fraud, it must be shown that there was a

misrepresentation of a **past or existing material fact** which induced the acceptance of the

contract.")(quoting Sellers v. Sellers,175 A. 401 (Pa. 1934))(emphasis added).  Contrary to

Petitioner's argument that the  "District Attorney **knew** the Sentencing Exhibit was worthless

and deceived the Petitioner into a guilty plea[,]" Dkt. [58] at 19 (emphasis added), Conrad could

not **know** but only guess as to what impact the sentencing exhibit might have on the outcome of

Petitioner's eventual request for commutation, assuming Petitioner were to eventually make such

a request for commutation.   Hence, we do not find that Petitioner's argument that the prosecutor

engaged in fraud or misrepresentation persuasive, as Conrad's privately held predictive

assessment (which he withheld from Petitioner and Petitioner's attorney) of the sentencing

exhibit's future potential impact on the Board's decision simply cannot be fraudulent because it

is an assessment of the likelihood of a future event, the truth or falsity of which cannot be proven

or known at the time of the plea negotiations.  There is nothing in the record to demonstrate that

Conrad did not believe that the sentencing exhibit increased Petitioner's chance at commutation,

and indeed, the PCRA Court in the first PCRA proceedings found as a fact that the sentencing

exhibit did increase Petitioner's chances or in its words "posture[] him in a better position than if

it did not exist[.]"  Furthermore, the videotaped evidence, **at most**, only discloses that even with

the increased chance provided by the sentencing exhibit, Conrad believed that the chance of

eventual commutation being granted by the Board was minimal or non-existent.  Simply put,

Conrad could have reasonably believed that Petitioner's chances for commutation without the

sentencing exhibit were one in a million, and even with the sentencing exhibit, his chances were

only one in 100,000 (which were slim chances but **relatively** better than the one in a million

without the sentencing exhibit) and hence, believed that Petitioner was receiving something of

value in exchange for his plea even if the value was not the precise value that Petitioner had

estimated the sentencing exhibit to possess.  That Conrad may have so believed does not mean

that Conrad engaged in prosecutorial misconduct of any sort, let alone of the kind of fraud

Petitioner alleges.  This is true even if the estimations by Petitioner and Petitioner's trial counsel

of Petitioner's chance for commutation were much more optimistic than Conrad's estimation.

Thus, Petitioner has not shown that granting the motion would be for the purpose of doing

substantial justice.

As to consideration four, regarding the timing, we have already found that this motion

was not filed within a reasonable time and hence this factor weighs against granting the motion.

As to consideration five, i.e., whether intervening equities make it inequitable to grant

relief, there is nothing pointed to by Petitioner that intervening equities have or have not occurred

and so he has not carried his burden to show that this factor weighs in favor of granting the

motion.

As to the catchall consideration, relief is not sought from a default judgment, hence this

factor weighs in favor of denying the motion.  The interest in deciding this case on the merits

does not outweigh the interest in orderly procedure and in the finality of judgments given the

analysis above with respect to the substantial justice consideration, i.e., Petitioner's claim on the

merits is less than persuasive.  The same may be said for whether there is merit in the claim.  As

to the factor of whether Petitioner had a fair opportunity to present his claim, he has done so in

six different courts since roughly the year 2000 and only one granted him relief, only to be

reversed by the Superior Court.

Hence, in light of the above, the Rule 60(b) motion should be denied.

Alternatively, and finally, in the interest of judicial economy (if the District Court and/or Court of Appeals find that the Rule 60(b) motion should have been granted), even if the Rule 60(b) motion were to be granted and the case reopened for the Court to consider on the merits Petitioner's Motion to Introduce Evidence of the Videotape, such Motion to Introduce should be denied on the merits (and presumably was denied on the merits by Judge Lancaster's order dismissing the habeas case), for several reasons. First, it should be denied because the habeas petition originally filed in this case contains no such claim of prosecutorial misconduct (indeed, the originally filed habeas petition could not have included such a claim given that the factual basis of the claim had not yet arisen) and has never been amended to contain such a claim. Hence, the evidence sought to be introduced would simply be irrelevant to any claim properly before this court. Second, even if Petitioner were to properly seek leave to amend to include such a claim at this late date, and such leave were to be granted, we note that as of now, Petitioner has exhausted the claim but the Superior Court held the claim to have been time barred under the PCRA and such constitutes a procedural default and Petitioner has not shown cause and/or prejudice nor can he show actual innocence so as to excuse the default. Hence, amendment to include such a claim would be futile. Third, even if we permitted such an amendment and overlooked the procedural default bar, the evidence that Petitioner seeks to introduce, (which evidence for present purposes we accept as true), which concerns Prosecutor Conrad's then subjectively held beliefs about the value of the sentencing exhibit vis-a-vis Petitioner's future chances of achieving commutation, simply cannot successfully form the basis

27

of a claim of prosecutorial misconduct based upon fraudulent misrepresentation.  This is because the alleged fraudulent misrepresentation made by Conrad concerned the future impact of the sentencing exhibit on the Board of Pardons and not a representation concerning a past or existing fact.  Hence, the motion should be denied as seeking to introduce evidence of a meritless claim.

Accordingly, for any or all of the foregoing reasons, the Rule 60(b)(6) motion should be denied.  In the alternative, the Rule 60(b)(6) motion should be granted, the judgment reopened and the Motion to Introduce denied on the merits.

Certificate of Appealability

It is further respectfully recommended that a Certificate of Appealability be denied as Petitioner has not made any showing that he has been denied any of his constitutional rights or that the procedural rulings were debatable by jurists of reason.  Morris v. Horn, 187 F.3d 333, 339- 41 (3d Cir. 1999)(applying COA requirement to habeas petition seeking to appeal a denial of a Rule 60(b) motion).

III.   Conclusion

In accordance with the Magistrate Judges Act, 28 U.S.C.  § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Civil Rules for Magistrate Judges, the parties are allowed ten (10) days from the date of service to file written objections to this Report and Recommendation.  Any party opposing the objections shall have ten (10) days from the date of service of objections to respond thereto.  Failure to file timely objections may constitute a waiver of any appellate rights.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) & (C), and Local Rule 72.1.4 B, the parties are permitted to file written objections and responses thereto in accordance with the

schedule established in the docket entry reflecting the filing of this Report and Recommendation and the Court's Order on Motions Practice.  Failure to timely file objections may constitute waiver of any appellate rights.

Respectfully submitted,

/s/ *Amy Reynolds Hay*
Chief United States Magistrate Judge

Dated: 2 September, 2009

cc:     The Honorable Gary L. Lancaster
        United States District Judge


        All counsel of record via CM-ECF